## Application of HERBENER.

(Court of Appeals of District of Columbia. Submitted November 11, 1926. Decided December 6, 1926.)

### No. 1885.

Patents ⊙=39—Application for patent on method of determining quality of cotton linters held not to disclose invention.

Application for patent on a method of determining and ascertaining the quality of cotton linters, involving the consecutive arrangement of the various grades of linters in consecutively lettered boxes, *held* not to disclose invention.

Appeal from the Commissioner of Patents.

In the matter of the application of Henry M. Herbener for patent. From a decision of the Commissioner of Patents, rejecting certain claims, applicant appeals. Affirmed.

B. P. Fishburne, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents, affirming the decision of the Board of Examiners in Chief in refusing to allow claims 9, 10, 14, 15, and 16 of appellant's application for a patent on a meth-

od of determining and describing the quality of cotton linters.

The invention consists of a box with lettered compartments, in which the samples of linters are arranged in the order of gradually inferior quality. Samples of linters which are to be graded are placed side by side and arranged in the boxes, and in this way the comparison of quality may be determined. The method of accomplishing this is described in appellant's application as follows:

"In treating a number of bales of linters, for determining and describing their quality, the sample pieces may be withdrawn from the bales, at the different points of difference, and the sample pieces thrown upon a table or the like. The sample pieces are next to be sorted or graded, and I preferably select a sample piece of the highest quality and a sample piece of the lowest quality, arranging them in spaced relation upon the table. I next select a sample piece of intermediate quality and arrange it between the end sample pieces. Sample pieces having qualities between the intermediate sample piece and end pieces are now selected and arranged between the same. This operation is continued until the graduated group contains a sufficient number of pieces with which to sort the remaining pieces. This sorting of the remaining pieces is accomplished by comparing them with the pieces in the graduated group, produced as above indicated, and arranging the corresponding pieces preferably at the rear of each piece in the group, leaving the group piece visible for comparison. The sorted or graded pieces may now be arranged in types, which may be accomplished by withdrawing a piece from the lowest quality pile, and pieces from the remaining quality piles, in proportion to the number of pieces in the lowest quality pile. The pieces in each type, thus produced, are arranged consecutively with respect to quality, and also indicating that there are more of the medium qualities than of the high and low qualities."

The rejected claims relate entirely to the method of arranging samples of linters from bales, and determining in this manner the grade. It is not different in principle from the method of grading in separate boxes samples of any product. The samples are pulled out at random from various portions of the bale of linters, and the quality of the samples determines the grade. It amounts merely to comparing the quality of two articles by laying them side by side.

Appellant's claims were held to be anticipated by a patent to one Green, December 3, 1918, No. 1,286,589. Green's device shows a series of containers holding sample pieces of cotton. There are nine compartments, to hold samples of the nine standard government grades of cotton. While it is not stated in Green's patent that the sample pieces of cotton are arranged consecutively with respect to quality, we think this is immaterial. Green's device accomplishes the same result on a less elaborate scale than is accomplished by appellant's device.

It is unnecessary for us to express an opinion on the patentability even of the Green device, since it has been favorably passed upon by the Patent Office. Certainly appellant has not made such an improvement, as set forth in the rejected claims, as would entitle him to a patent over Green. It is unnecessary to consider the claims allowed, since they are not before us for determination on the question of patentability. A comparison, however, discloses that certain of the appealed claims seem to be covered by the claims allowed, as, for example, appealed claim 14 by allowed claim 5. The same comparison might be extended to appealed claim 16 and allowed claim 5, excepting perhaps that the appealed claims are somewhat broader in their scope.

We fail to find anything patentable in the rejected claims, which relate merely to the consecutive arrangement of the various grades of linters in consecutively lettered boxes. This may serve a great convenience, but there is nothing new or novel in the arrangement. We think, therefore, that, even if the Green patent were not in the case, appellant's claims were properly rejected, for the reason that they fail to disclose a patentable invention.

The decision of the Commissioner of Patents is affirmed.